# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| CHELSEA KOENIG, on behalf of herself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>GRANITE CITY FOOD & BREWERY, LTD and DOE DEFENDANTS 1-10,<br><br>Defendant(s). | CIVIL ACTION NO.: 2:16-CV-1396 |

## MEMORANDUM OF LAW IN SUPPORT OF
## PLAINTIFF'S UNOPPOSED MOTION FOR FINAL APPROVAL OF CLASS AND COLLECTIVE ACTION SETTLEMENT

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES…………………………………………………………………….iii

I.  INTRODUCTION .................................................................................................... 1

II. FACTUAL BACKGROUND AND STATUS OF THE LITIGATION .......................... 3

III. KEY PROVISIONS OF THE SETTLEMENT ......................................................... 7

    A.  The Proposed Settlement Class............................................................... 7

    B.  Monetary Terms........................................................................................ 8

    C.  Dismissal and Release Of Claims ........................................................... 9

IV. CLASS NOTICE SATISFIES RULE 23 & DUE PROCESS ....................................... 10

V.  ARGUMENT ......................................................................................................... 12

    A.  The Settlement Agreement Warrants Final Approval By The Court ................... 12

        1.  Complexity, Expense And Likely Duration Of The Litigation ............... 15

        2.  Reaction Of The Class To The Settlement ................................... 15

        3.  Stage Of The Proceedings And The Amount Of Discovery
            Completed ......................................................................... 16

        4.  Risks Of Establishing Liability And Damages
            (*Girsh* factors 4 and 5)........................................................ 17

        5.  Risks Of Maintaining The Class Action Through The Trial ................... 18

        6.  Ability Of The Defendant To Withstand A Greater Judgment................. 19

        7.  Range Of Reasonableness Of The Settlement Fund In Light Of The Best
            Possible Recovery And All The Attendant Risks Of Litigation .............. 20

    B.  The Proposed Settlement Provides Substantial Benefit to the Class .................. 21

VI. THE COURT SHOULD FiNALLY CERTIFY THE SETTLEMENT CLASS .............. 21

VII. CONCLUSION......................................................................................................... 22

# TABLE OF AUTHORITES

**Cases**                                                                                      **Page(s)**

*Austin v. Pennsylvania Dep't of Corrs.*,
    876 F. Supp. 1437 (E.D. Pa. 1995) ......................................................................................14

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).............................................................................................15

*Delandro v. County of Allegheny*,
    No. 06-937, 2011 U.S. Dist. LEXIS 55249 (W.D. Pa. May 24, 2011) ...........................17, 18

*Ehrheart v. Verizon Wireless*,
    609 F.3d 590 (3d Cir. 2010).............................................................................................12

*In re Flonase Antitrust Litig.*,
    951 F. Supp. 2d 739 (E.D. Pa. 2013) ...............................................................................7, 12

*Flores v. Mamma Lombardi's of Holbrook, Inc.*,
    104 F. Supp. 3d 290 (E.D.N.Y. 2015) ................................................................................19

*In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*,
    55 F.3d 768 (3d Cir. 1995)...............................................................................................12, 20

*Girsh v. Jepson*,
    521 F.2d 153 (3d Cir. 1975)................................................................................ *passim*

*Graudins v. Kop Kilt, LLC*,
    No. 14-cv-2589, 2017 U.S. Dist. LEXIS 25926 (E.D. Pa. Feb. 24, 2017) .........................2, 20

*In re Janney Montgomery Scott*,
    2009 U.S. Dist. LEXIS 60790 ...........................................................................................16, 22

*Kotchmar v. Movie Tavern Partners, LP, et al.*,
    No. 15-cv-04061 (E.D. Pa. 2016) .....................................................................................20

*Lake v. First Nationwide Bank*,
    900 F. Supp. 726 (E.D. Pa. 1995) ....................................................................................14

*Lazy Oil Co. v. Witco Corp.*,
    95 F. Supp. 2d 290 (W.D. Pa. 1997).................................................................................17

*Leap v. Yoshida*,
    No. 14-3650, 2016 U.S. Dist. LEXIS 57819 (E.D. Pa. April 29, 2016)................................22

*In re Linerboard Antitrust Litig.*,
    292 F. Supp. 2d 631 (E.D. Pa. 2003) ...............................................................................15

*Low v. Trump Univ., LLC*,
    246 F. Supp. 3d 1295 (S.D. Cal. 2017).................................................................................7

*McLaughlin v. Phelan Hallinan & Schmieg, LLP*,
    No. 10-cv-01406, 2016 U.S. Dist. LEXIS 168889 (W.D. Pa. March 20, 2016) ...................14

*In Re Prudential Ins. Co. of Am. Sales Litig.*,
    148 F.3d 283 (3d Cir. 1998)..............................................................................................3, 14

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    177 F.R.D. 216 (D.N.J. 1997)................................................................................................10

*In re Prudential Ins. Co. of Am. Sales Practices Litig.*,
    962 F. Supp. 450 (D.N.J. 1997), *aff'd*, 148 F.3d 283 (3d Cir. 1998)....................................19

*Reich v. Chez Robert, Inc.*,
    28 F.3d 401 (3d Cir. 1994)......................................................................................................5

*In re Rent-Way Secs. Litig.*,
    305 F. Supp. 2d 491 (W.D. Pa. 2003)...................................................................................19

*Rouse v. Comcast Corp.*,
    No. 14-cv-1115, 2015 U.S. Dist. LEXIS 49347 (E.D. Pa. April 15, 2015)............................22

*In re Schering-Plough Corp.*,
    No. 08-1432, 2012 U.S. Dist. LEXIS 75213 (D.N.J. May 31, 2012)......................................16

*In re School Asbestos Litig.*,
    921 F.2d 1330 (3d Cir. 1986).................................................................................................12

*Slomovics v. All for a Dollar, Inc.*,
    906 F. Supp. 146 (E.D.N.Y. 1995) .......................................................................................15

*Varacallo v. Mass. Mutual Life Ins. Co.*,
    226 F.R.D. 207 (D.N.J. 2005)................................................................................................16

*In re Warfarin Sodium Antitrust Litig.*,
    391 F.3d 516 (3d Cir. 2004)............................................................................................12, 13

*Zanghi v. FreightCar Am., Inc.*,
    No. 3:13-146, 2016 U.S. Dist. LEXIS 5914 (W.D. Pa. Jan. 19, 2016) ..........................16, 18

## Statutes

29 U.S.C. §§ 201 *et seq*.........................................................................................................3

Fair Labor Standards Act of 1938........................................................................... *passim*

Pennsylvania Minimum Wage Act, 43 P.S. § 333.101, *et seq.* ...........................................3, 10, 14

Pennsylvania Wage Payment and Collection Law, 43 P.S. § 260.1, *et seq.*..............................3, 10

**Other Authorities**

Fed. R. Civ. P. 23 ................................................................................................ *passim*

Fed. R. Civ. P. 23(b) .............................................................................................6, 23

Fed. R. Civ. P. 23(e) .................................................................................7, 10, 11, 13

Fed. R. Civ. P. 30(b)(6)..............................................................................................6

Plaintiff Chelsea Koenig ("Plaintiff") submits this brief in support of her unopposed motion for final approval of the class and collective action Settlement reached by the Parties in this matter.[1]  With this unopposed motion, Plaintiff is filing the Settlement Agreement and related documents as well as supporting declaration and a proposed Final Approval Order.  This Court preliminarily approved the Settlement on December 21, 2017.  As set forth below, all conditions required for final approval have been met.

## I.   INTRODUCTION

Plaintiff seeks final approval of the proposed Settlement which will resolve claims that have been pending before this Court.  The Settlement consists of a cash payment by Defendant of $305,000.00 which, after deductions for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Claims Administrator, and any court-approved Service Payment to the Plaintiff, shall be distributed to Class Members in accordance with the formula for determining the "Settlement Payment" set out in the Settlement Agreement.  *See* Settlement Agreement, at §4.7. The foregoing parameters of the Settlement were conveyed to members of the Settlement Class in the manner described in the Settlement Agreement.

Accordingly, the proposed Settlement is now ready for final review, as Plaintiff has fully complied with the terms of the Court's Preliminary Approval Order, dated December 21, 2017, including providing notice of the proposed Settlement to the Settlement Class.   After mailing the approved form of Class Notice to 255 members of the Settlement Class, to date, Class Counsel

---

[1] All capitalized terms used in this brief that are also defined in the Settlement Agreement ("SA") shall have the same meaning as set forth in the Settlement Agreement.  Although previously provided to the Court, for the sake of thoroughness, Class Counsel is resubmitting the SA as Exhibit 1 to the Declaration of Gerald D. Wells, III ("Wells Decl.").  The Wells Decl. is incorporated herein by reference.

has received no objections to any aspect of the proposed Settlement, including the requested attorneys' fee and the proposed Service Payment to Plaintiff.[2]

The Parties only reached the Settlement after vigorous, arms-length settlement negotiations, which included a Court-ordered ADR mediation, and months of further settlement negotiations between the Parties. Indeed, the Settlement was only reached after Class Counsel received and reviewed certain information concerning Defendant's financial condition and interviewed Defendant's Chief Financial Officer. In short, every aspect of this Settlement was meticulously negotiated by experienced counsel.

Quite simply, this Settlement is an excellent result as it recovers over 41% of the back wages owed. *See* Wells Decl. at ¶ 40.[3] Such a result is outstanding when viewed in light of the factual and legal risks to the class of continued, and likely protracted, litigation. *See, e.g., Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 U.S. Dist. LEXIS 25926 (E.D. Pa. Feb. 24, 2017) (granting final approval of $300,000 class settlement of wage claims of approximately 242 individuals, where approximately 50% of back wages were recovered). Absent the Settlement reached here, there is no guarantee that Plaintiff would have prevailed at trial. Consequently, this Settlement removes the risk of litigation, including possible appellate arguments, while at the same time compensating Class Members in light of Defendant's declining financial condition. Had this Settlement not been achieved, Plaintiff and the members of the Settlement Class faced the very real risk that they would recover nothing.

---

[2] Of course, should Class Counsel receive any objections subsequent to the filing of this brief but before the deadline for submitting an objection – March 19, 2018 – Class Counsel will respond to such an objection at or before the Final Approval Hearing, presently scheduled for March 28, 2018.

[3] Based on the Claims Administrator's preliminary calculations, the highest individual recovery a Class Member will receive from the Settlement is $6,408.70 and the average recovery for Participating Settlement Class Members is $703.73. *See* Declaration of Melissa E. Baldwin (Claims Administrator)("Baldwin Decl.") at ¶11.

Specifically, Plaintiff requests that the Court enter the accompanying proposed Final Approval Order that, among other things, will grant final approval of the Settlement Agreement. For the reasons set forth in greater detail below, the Settlement is fair, reasonable and adequate to the Settlement Class, and satisfies all of the criteria that courts in this Circuit routinely apply for the approval of class action settlements. *See, e.g. In Re Prudential Ins. Co. of Am. Sales Litig.*, 148 F.3d 283 (3d Cir. 1998); *Girsh v. Jepson*, 521 F.2d 153 (3d Cir. 1975).

## II.    FACTUAL BACKGROUND AND STATUS OF THE LITIGATION

Plaintiff filed her Complaint on September 9, 2016.  Plaintiff brought this case as a class and collective action against her employer for Defendant's alleged violations of: (1) the minimum wage requirements of the Fair Labor Standards Act of 1938, as amended 29 U.S.C. §§ 201 *et seq*. ("FLSA"); (2) the minimum wage requirements of the Pennsylvania Minimum Wage Act ("PMWA"), 43 P.S. § 333.101, *et seq.*; and (3) the Pennsylvania Wage Payment and Collection Law ("PWPCL"), 43 P.S. § 260.1, *et seq.*

In her complaint, Plaintiff alleges that Defendant violated the FLSA, PMWA and PWPCL by systematically and willfully denying its Tipped Employees certain wages due and owing.  Specifically, Plaintiff alleges that Defendant (i) failed to satisfy the notice requirements of the tip credit provisions in federal and state law; (ii) failed to ensure Tipped Employees earned the mandated minimum wage when taking the tip credit; (iii) required Tipped Employees to use their tips to reimburse Defendant for cash shortages and customer walk-outs; and (iv) required Tipped Employees to pay for other ordinary business expenses of Defendant.  *See* Wells Decl. at ¶ 17.

As this Court is well aware, the FLSA allows for an employer to take a tip credit and pay its tipped employees less than minimum wage in certain limited circumstances, provided that the employee's tips received from customers plus the tip credit paid by the employer equals at least

the applicable minimum wage.  According to the Department of Labor's ("DOL") Fact Sheet

#15: Tipped Employees Under the Fair Labor Standards Act (FLSA) ("Fact Sheet #15"):

> the maximum tip credit that an employer can currently claim under the
> FLSA is $5.12 per hour (the minimum wage of $7.25 minus the minimum
> required cash wage of $2.13).

However, in order to legally utilize the tip credit provisions of the FLSA, employers must

satisfy certain black and white requirements.  In order to claim the tip credit, an employer must

demonstrate that they have complied with each and every one of the five enumerated provisions

set forth in Fact Sheet #15.[4]  Failure to comply with any one of the enumerated provisions

eliminates the employer's ability to claim any tip credit, resulting in the full minimum wage of

$7.25 being due and owing.

First and foremost, an employer must explicitly notify the employee as to (i) the cash

wage being paid by the employer and (ii) the amount of the tip credit being claimed by the

employer.  Second, the employer must inform the employee that the employee must still earn the

mandated minimum of $7.25 per hour between the amount of the tip credit taken by the

employer and the amount of tips earned by the employee.  An employer bears the burden of

showing that it has satisfied the notification requirement of informing its employees that tips are

being credited against the employee's hourly wage.  If an employer cannot demonstrate its

compliance with this notification requirement, no credit can be taken and the employer is liable

for the full minimum wage.  In addition to notifying its employees of its intention to take the tip

---

[4] Per Fact Sheet #15: The employer must provide the following information to a tipped employee before the
employer may use the tip credit: 1) the amount of cash wage the employer is paying a tipped employee, which must
be at least $2.13 per hour; 2) the additional amount claimed by the employer as a tip credit, which cannot exceed
$5.12 (the difference between the minimum required cash wage of $2.13 and the current minimum wage of $7.25);
3) that the tip credit claimed by the employer cannot exceed the amount of tips actually received by the tipped
employee; 4) that all tips received by the tipped employee are to be retained by the employee except for a valid tip
pooling arrangement limited to employees who customarily and regularly receive tips; and 5) that the tip credit will
not apply to any tipped employee unless the employee has been informed of these tip credit provisions.

credit, an employer must also inform its employees that all tips received by the employee are to be retained by the employee (except for those tips that are part of a valid tip pooling arrangement)[5] in order to claim a tip credit.

Moreover, the employer must ensure that the employee earned enough in tips to cover the tip credit claimed by the employer.  Accordingly, where a tipped employee earns less in tips than the tip credit claimed, the employer is required to make up the difference.  Stated another way, if a tipped employee earns less than $4.42 per hour in tips (the maximum tip credit permissible under Pennsylvania law where the employer pays the employee $2.83 per hour), the employer must raise that tipped employee's hourly cash component the necessary amount above $2.83 per hour so as to ensure that the employee earns at least $7.25 per hour – the mandated minimum wage.

In her complaint, Plaintiff alleged that Defendant failed to satisfy the requirements of Fact Sheet # 15.  Further, Plaintiff alleged that Defendant failed to explicitly notify her that it was taking a tip credit in the amount of $4.42 per hour against its requirement to pay the minimum wage of $7.25.[6]  Simply stated, Plaintiff alleged Defendant failed to satisfy multiple provisions of the notice requirements for taking the tip credit.  An employer must only fail to satisfy one provision to be held liable for violating the tip credit.  *See Reich v. Chez Robert, Inc.*, 28 F.3d 401, 403 (3d Cir. 1994) (holding that when an employer failed to comply with one or more provision of Section 203(m), "then no tip credit can be taken and the employer is liable for the full minimum-wage").

Shortly after commencement of this Action, Defendant filed a motion to dismiss

---

[5] Plaintiff did not allege that Defendant required its Tipped Employees to participate in an invalid tip-pooling arrangement such as those where managers impermissibly participate in the tip pool.

[6] Plaintiff was employed as a bartender at an hourly rate of $2.83.

predicated on the first-to-file rule.  *See* Wells Decl. at ¶ 18.  After briefing the issue, and a conference with the Court, the Parties agreed that Plaintiff's claims would be limited to those restaurant locations doing business as Cadillac Ranch.  *Id.,* at ¶ 19.  On January 5, 2017, Plaintiff filed an Amended Complaint narrowing her claims to only those locations doing business as Cadillac Ranch. The following day, the Court issued a discovery schedule in the Action.

During discovery, the Parties exchanged hundreds of pages of documents. Plaintiff deposed a Rule 30(b)(6) witness and Defendant deposed Plaintiff.  *See* Wells Decl. at ¶ 22.  On April 21, 2017, Plaintiff filed her motion to certify the Pennsylvania state claims pursuant to Fed. R. Civ. P. 23 and conditionally certify her federal claims pursuant to Section 216(b) of the FLSA. Defendant opposed these motions.  On May 11, 2017, the Court granted Plaintiff's motions to certify each of the classes.  On May 23, 2017, the Parties engaged in the Court mandated ADR process before a mediator, Carol Katz, Esq.  *Id.,* at ¶ 27.  It was during this mediation that counsel for Defendant first apprised Plaintiff of certain financial difficulty facing Defendant.  *Id.*  While unsuccessful, that mediation session led to further discussion amongst counsel regarding the possibility of settlement.

After the period of time for Pennsylvania Class members to seek exclusion pursuant to Rule 23(b)(3) expired, along with the deadline for individuals to opt-in pursuant to Section 216(b) of the FLSA, on August 16, 2017 the Court held a telephonic conference and set a new discovery deadline of November 15, 2017. The Court also set a date of March 19, 2018 for commencement of the trial in this Action. In response, the Parties propounded additional discovery on each other, and Class Counsel interviewed numerous opt-in plaintiffs in order to prepare their discovery responses.

In September of 2017, counsel for Defendant contacted counsel for Plaintiff to apprise

Plaintiff of the continuing deteriorating financial condition of Defendant. Thereafter, the Parties quickly worked out an agreeable confidentiality provision so that Defendant could provide Class Counsel with highly sensitive financial information. On November 2, 2017, counsel for Plaintiff interviewed Defendant's Chief Financial Officer ("CFO") regarding Defendant's deteriorating financial condition. *See* Wells Decl. at ¶32. Finally, the proposed Settlement was further modified to address certain concerns the Court raised during the preliminary approval hearing held on December 12, 2017.

## III.   KEY PROVISIONS OF THE SETTLEMENT

The key components of the Settlement are set forth below, and a complete description of the terms and conditions of the Settlement are contained in the Settlement Agreement, which is attached to the Wells Decl. as Exhibit 1.

### A.   THE PROPOSED SETTLEMENT CLASS

Through the Settlement Agreement, the Parties stipulated to expanding the Court's previously certified Rule 23 class for settlement purposes only. The Settlement Agreement covers all current and former Tipped Employees who worked at Cadillac Ranch in Pennsylvania at any time between September 9, 2013 and August 31, 2017. Because of the recent opt-out period following the Court's granting of Rule 23 certification in May of 2017, the Settlement Agreement did not permit a second opt-out period. This is consistent with the Federal Rules and applicable case law. *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1309 (S.D. Cal. 2017) (noting that "Rule 23(e)(4) expressly confers discretion, rather than a mandate, upon a district court to refuse to approve a settlement that does not allow for an opportunity to opt out"). Indeed, at least one district court in this Circuit has approved a settlement of a previously certified class action where the settlement did not permit a second opt-out period. *See In re In re*

*Flonase Antitrust Litig.,* 951 F. Supp. 2d 739, 745 (E.D. Pa. 2013)(granting final approval and noting lack of objections, even though court did not permit second opt-out period).

In addition to the Pennsylvania Class Members, the Settlement also includes the 58 individuals who opted-into this Action (25 individuals are both members of the Rule 23 Class and the FLSA Class and 33 individuals are members of the FLSA Class only – as they worked at a Cadillac Ranch location outside of Pennsylvania during the applicable period). In short, the proposed Settlement resolves finally and completely the wage-related claims of all the individuals presently before the Court.

### B.   MONETARY TERMS

The proposed "Settlement Amount" consists of cash payment in the amount of Three Hundred Five Thousand U.S. Dollars and No Cents ($305,000.00). *See* SA at § 2.35. In accordance with the Settlement Agreement, the Claims Administrator shall make deductions from the Settlement Amount for court-approved attorneys' fees and reasonable litigation costs, fees and expenses for the Claims Administrator, and court-approved Service Payment for the Plaintiff, in recognition of the risks and benefits of her participation and substantial services she performed.[7] *Id.*, at § 4.7. The amount remaining after these deductions (the "Estimated Maximum Net Settlement Amount) shall be distributed to Class Members in accordance with the "Allocation Formula" set out in the Settlement Agreement. The Claims Administrator will make all legally mandated payroll deductions prior to distributing the settlement payments to all individual Participating Class Members.

The proposed Allocation Formula prorates the recovery among Participating Class Members according to how many hours they are recorded as having worked and provides as

---

[7] Per the Settlement Agreement, Class Counsel has agreed not to seek more than 35% of the Settlement Amount. Class Counsel is filing a separate motion for approval of attorneys' fees and costs contemporaneously with this motion.

follows:  For each Participating Settlement Class Member, the Claims Administrator will multiply the difference between the full minimum wage ($7.25 in Pennsylvania) and the hourly rate actually paid by Defendant to that Participating Settlement Class Member.  The Participating Individual Damage Amount for all Participating Settlement Class Members will then be added together by the Claims Administrator to determine the "Participating Settlement Class Members' Total Damage Amount."  The Net Settlement Amount will be divided by the Participating Settlement Class Members' Total Damage Amount.  The resulting fractional amount will then be multiplied by a Participating Individual Damage Amount to determine that Participating Settlement Class Member's Settlement Payment.   *See* SA at § 4.7.

Each Class Member will receive three checks.  One will represent the portion of the Settlement attributable to their federal wage claim.  The second will represent the portion of the Settlement attributable to their state wage claim.  The third check will represent their portion of the Settlement attributable to liquidated damages, penalties, interest, and other relief.  If the total amount of any uncashed checks total $10,000 or more, there shall be a redistribution of said funds to individuals who cashed their settlement checks.  Should the amount of uncashed checks be less than $10,000, such funds will revert back to Defendant.  *See* SA at § 4.7.

Finally, in accordance with the Settlement Agreement, Class Counsel will seek the Court's approval for payment of a "Service Payment" to the Plaintiff in the amount of $7,500.  *Id*. at §4.14.  This Service Payment shall be in addition to any distribution Plaintiff receives from the Settlement Amount, as described above, and shall not be opposed by Defendant.

### C.    DISMISSAL AND RELEASE OF CLAIMS

Upon the Effective Date, all Pennsylvania Class Members will be deemed to forever and fully release and discharge Defendant, and release and hold harmless the Released Persons, from any and all Pennsylvania wage-related claims of any kind, including but not limited to any

claims pursuant to the PMWA and PWPCL that any of the Releasing Persons has, had, might have or might have had against any of the Released Persons based on any act or omission that during the Class Period, in any way related to any of the facts or claims that were alleged or that could have been alleged in the Litigation or by reason of the negotiations leading to this Settlement, even if presently unknown or un-asserted.  *See* SA at § 5.

By operation of the Settlement Agreement, a Class Member, who is not also an FLSA Class Member, will only release their FLSA claim by endorsement of their settlement check attributable to their federal wage claim.  Similarly, individuals who are FLSA Class Members – and did not work in Pennsylvania -- will only release their state wage claim if they endorse their settlement check attributable to their state wage claim.

The Settlement Class was apprised of these elements comprising the Settlement in the Class Notice which was previously approved by this Court and disseminated to members of the putative class.  *See* Wells Decl. at ¶¶ 52-53.  Notably, as of this filing, not a single Settlement Class Member objected to any aspect of the proposed Settlement.  *See* Wells Decl. at ¶ 58.

## IV.    CLASS NOTICE SATISFIES RULE 23 & DUE PROCESS

"Rule 23(e)(1)(B) requires the Court to direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise . . .." Manual for Complex Litigation, §21.312.  The notice of the proposed Settlement "need only be reasonably calculated, under all of the circumstances, to apprise interested parties of the pendency of the settlement proposed and to afford them an opportunity to present their objections."  *In re Prudential Ins. Co. of Am. Sales Practices Litig.*, 177 F.R.D. 216, 231 (D.N.J. 1997) (citing *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314, 94 Ed. 865, 70 S. Ct. 652 (1950) ("An elementary and fundamental requirement of due process in any proceeding which is to be accorded finality is notice reasonably calculated under all the

circumstances, to apprise interested parties of the pendency of the action and afford them the opportunity to present their objections.").

Here, the form and method of notice plainly satisfied all due process considerations and met the requirements of Fed. R. Civ. P. 23(e)(1). In accordance with the Court's Preliminary Approval Order, as well as the terms of the Settlement Agreement, the Claims Administrator mailed the approved Notice of Class Action Settlement to 255 potential Class Members at each individual's last known address. *See* Baldwin Decl. at ¶6. Of this amount, it appears that only 6 Class Members had stale addresses to which the Notice could not be forwarded. *Id.* at ¶ 9. This yields a very low undeliverable rate and, in any event, a rate at or below what has been seen in other class actions. *Id.* Additionally, the Class Notice was posted on an internet website (maintained by the Claims Administrator).

The Class Notice utilized here provided Settlement Class Members with all the pertinent information regarding the Litigation and the Settlement. The Class Notice fully informed Settlement Class Members of the underlying facts of this matter, the terms of the proposed Settlement, and the information they need to make informed decisions about their rights. The Class Notice provided detailed information about the Settlement, including: (1) the essential terms of the Settlement, including how the Settlement's proceeds will be allocated; (2) Settlement Class Members' rights with respect to the Settlement, including their right to object to the proposed settlement; (3) detailed information about the Released Parties and the Released Claims; (4) information about the date of the Final Approval Hearing; (5) information regarding Class Counsel's motion for attorneys' fees and reimbursement of litigation expenses; and (6) the proposed Service Payment for the Plaintiff. In sum, the Class Notice provided specifics on the

date of the Final Approval Hearing, Settlement Class members' rights to object to the Settlement (and deadlines and procedures for doing so), and the procedure to receive additional information.

Similar notice plans have been successfully used in other class action settlements. *See In re Flonase Antitrust Litigation*, 951 F. Supp. 2d 739, 753 (E.D. Pa. 2013). Indeed, the Court already found the direct-mail Class Notice was adequate to inform Settlement Class Members of the terms of the proposed Settlement and how to lodge an objection, and obtain additional information, and endorsed the Class Notice in its Preliminary Approval Order.   In Class Counsel's view, the notice plan utilized in this Litigation meets or exceeds the standards for due process and Rule 23. Now that Class Counsel and the Claims Administrator have effectuated the Notice pursuant to the Court-approved plan, this Court should finally hold that the Class Notice was adequate.

## V.   ARGUMENT

### A.   THE SETTLEMENT AGREEMENT WARRANTS FINAL APPROVAL BY THE COURT

The settlement of class action litigation is favored and encouraged in the Third Circuit. *See Ehrheart v. Verizon Wireless*, 609 F.3d 590, 595 (3d Cir. 2010) ("Settlement agreements are to be encouraged because they promote the amicable resolution of disputes and lighten the increasing load of litigation faced by the federal courts"); *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 535 (3d Cir. 2004) ("there is an overriding public interest in settling class action litigation, and it should therefore be encouraged"); *In re General Motors Corporation Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 784 (3d Cir. 1995) ("The law favors settlements, particularly in class actions and other complex cases where substantial judicial resources can be conserved by avoiding formal litigation"); *In re School Asbestos Litig.*, 921 F.2d 1330, 1333 (3d Cir. 1986) (noting Third Circuit's policy of "encouraging settlement of complex litigation that otherwise would linger for years").

Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for the settlement of class actions.  When a proposed class settlement is reached, it must be submitted to the Court for approval.  H. Newberg & A. Conte, NEWBERG ON CLASS ACTIONS § 11.41 (4th ed. 2009) ("NEWBERG"); *Oslan*, 232 F. Supp. at 439-40.  Preliminary approval is the first of three steps comprising the approval process for settlement of a class action. The second step is the dissemination of notice of the settlement to all Class members.  Finally, there is a settlement approval or final fairness hearing.  *See* Manual for Complex Litigation § 21.632-633 (4th ed. 2004).  We are at the final step of this three-step process and submit this memorandum for the Court's consideration in advance of the Final Approval Hearing, currently scheduled for March 28, 2018.

To determine whether the settlement is fair, reasonable and adequate under Rule 23(e), courts in the Third Circuit apply the nine-factor test enunciated in *Girsh v. Jepson*, 521 F.2d 153, 157 (3d Cir. 1975), which was reaffirmed in *In re Warfarin Sodium Antitrust Litig.*, 391 F.3d 516, 534-35 (3d Cir. 2004).  These factors are:

1)   The complexity, expense, and likely duration of the litigation;

2)   the reaction of the class to the settlement;

3)   the stage of the proceedings and the amount of discovery completed;

4)   the risks of establishing liability;

5)   the risks of establishing damages;

6)   the risks of maintaining the class action through the trial;

7)   the ability of the defendants to withstand a greater judgment;

8)   the range of reasonableness of the settlement fund in light of the best possible recovery; and

9)      the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*Girsh,* 521 F.2d at 156-57.

The Third Circuit has stressed that the most relevant consideration is whether the proposed settlement is within a "range of reasonableness" in light of all costs and risks of continued litigation; that is, the test is whether the proposed settlement is fair and reasonable under the circumstances.  *In re Prudential,* 148 F.3d at 322.  Class Counsel believe the terms of the proposed settlement in this case fall well within the "range of reasonableness" as the Settlement is fundamentally fair, reasonable and adequate, and achieve the goals envisioned by the FLSA and PMWA, especially when considering the risk, expense, complexity and delay associated with further litigation.  In making its determination of these risks, the Court should give deference to the opinions of counsel, who have researched the issues and are familiar with the facts of the litigation.  *Austin v. Pennsylvania Dep't of Corrs.*, 876 F. Supp. 1437, 1472 (E.D. Pa. 1995)("In determining the fairness of a proposed settlement, the Court should attribute significant weight to the belief of experienced counsel that settlement is in the best interests of the class."); *Lake v. First Nationwide Bank,* 900 F. Supp. 726, 732 (E.D. Pa. 1995) ("Significant weight should be attributed 'to the belief of experienced counsel that settlement is in the best interest of the class.'").[8]

As explained below, the application of the *Girsh* factors unequivocally demonstrates that the proposed Settlement is fair, reasonable and adequate.

---

[8] *See also McLaughlin v. Phelan Hallinan & Schmieg, LLP,* No. 10-cv-01406, 2016 U.S. Dist. LEXIS 168889, **3-4 (W.D. Pa. March 20, 2016) (approving class action settlement that was obtained after "extensive investigation of the facts . . . by counsel with significant experience litigating class actions").

### 1.      Complexity, Expense And Likely Duration Of The Litigation

This factor is concerned with assessing the "'probable costs, in both time and money, of continued litigation.'"  *In re Cendant Corp. Litig.*, 264 F.3d 201, 234 (3d Cir. 2001) (quoting *In re GMC Pick-Up Truck Fuel Tank Prods. Liab. Litig.*, 55 F.3d 768, 812 (3d Cir. 1995)).  Here, the probable costs of continued litigation with respect to both time and money are high.  This litigation has already gone on for over a year and a half and has been diligently litigated by both sides.  Defendant was prepared to vigorously contest Plaintiff's claims.  Further, much work has been done, including but not limited to: document review, full written discovery, depositions, interviews and other fact gathering, legal research, comparison of analogous cases, as well as significant motion practice.  If the Settlement is not granted final approval, additional litigation will be required, with no guarantee there will be any extra benefit to the Settlement Class.  A trial on the merits, and preparing for the same, would entail considerable expense on both sides.  The result would not necessarily end the litigation, giving the right of the losing party to appeal.  All of these facts weigh in favor of the Settlement.  *See In re Linerboard Antitrust Litig.,* 292 F. Supp. 2d 631, 642 (E.D. Pa. 2003) (noting that the "protracted nature of class action antitrust litigation means that any recovery would be delayed for several years," and "substantial and immediate benefits" to class members favors settlement approval); *Slomovics v. All for a Dollar, Inc.,* 906 F. Supp. 146, 149 (E.D.N.Y. 1995) (where litigation is potentially lengthy and will result in great expense, settlement is in the best interest of the class members).

Accordingly, this factor warrants the granting of final approval of this proposed Settlement.

### 2.      Reaction Of The Class To The Settlement

Pursuant to the Court's Order granting preliminary approval, as well as the terms of the Settlement Agreement, the deadline for Class Members to object or to exclude themselves from

the Settlement Agreement is March 19, 2018.  To date, Class Counsel has not received a single

objection to the Settlement.  The dearth of objections indicate approval by the Class Members,

and weigh in favor of final approval.  *See Varacallo v. Mass. Mutual Life Ins. Co.*, 226 F.R.D.

207, 237-38 (D.N.J. 2005) (finding objection requests of 0.003% "extremely low" and indicative

of class approval of the settlement); *In re Schering-Plough Corp.*, No. 08-1432, 2012 U.S. Dist.

LEXIS 75213, *12 (D.N.J. May 31, 2012)(noting lack of objections and finding "silence

constitutes tacit consent to the agreement . . . . and is entitled to nearly dispositive weight"

regarding whether the settlement is fair, reasonable and adequate); *see also In re Janney*

*Montgomery Scott*, 2009 U.S. Dist. LEXIS 60790, *25 (finding that no objections and only 10

requests for exclusion from a class of 1310 individuals "weighs greatly in favor of approving the

settlement").

Indeed, sister courts have approved settlements even where there was a high number of

objections.  *See, e.g., Zanghi v. FreightCar Am., Inc.,* No. 3:13-146, 2016 U.S. Dist. LEXIS

5914, *49 (W.D. Pa. Jan. 19, 2016) (granting approval of settlement despite court receiving

"approximately 451 total objections to the settlement out of the 1,085 member class").  Thus, this

factor also counsels in favor of granting final approval of the settlement.

### 3.        Stage Of The Proceedings And The Amount Of Discovery Completed

As noted above, the Parties have engaged in significant discovery regarding the validity

of Plaintiff's claims — including document production, deposing Plaintiff, and deposing

Defendant's corporate designee.  In short, Plaintiff has engaged in sufficient discovery to be fully

informed as to the appropriateness of the proposed settlement.  Further, Class Counsel was able

to achieve certification of a Rule 23 class as well as conditional certification of a 216(b)

collective action.  In addition, Plaintiff filed for summary judgment which the Court denied as

premature.  Consequently, there can be no dispute that the Parties engaged in significant work to

ferret out the contours of Plaintiff's claims.  *See, e.g., Delandro v. County of Allegheny,* No. 06-937, 2011 U.S. Dist. LEXIS 55249, *33 (W.D. Pa. May 24, 2011)(" The discovery and other investigations that the parties have undertaken render them sufficiently informed to make a determination about the fairness of a settlement."); *see also Lazy Oil Co. v. Witco Corp.,* 95 F. Supp. 2d 290, 308 (W.D. Pa. 1997)(approving settlement where discovery was "essentially complete" thereby allowing counsel to be "fully aware of the strengths and weaknesses of their case").

Accordingly, this factor also weighs in favor of final approval of the settlement.

### 4.     Risks Of Establishing Liability And Damages (*Girsh* factors 4 and 5)

"These inquiries survey the possible risks of litigation in order to balance the likelihood of success and the potential damage award if the case were taken to trial against the benefits of an immediate settlement."  *Ikon*, 209 F.R.D. at 105 (*quoting In re Prudential Ins. Co., Am. Sales Practice Litig. Agent Actions,* 148 F.3d at 319).  The *Ikon* court went on to explain:

> For example, if it appears that further litigation would realistically risk dismissal of the case on summary judgment or an unsuccessful trial verdict, it is in the plaintiffs' interests to settle at a relatively early stage. In contrast, if it appears that liability is extraordinarily strong, and it is highly likely that plaintiffs would prevail at trial, settlement might be less prudent. On this issue, the court should avoid conducting a mini-trial and must to a certain extent, give credence to the estimation of the probability of success proffered by class counsel, who are experienced with the underlying case, and the possible defenses which may be raised to their causes of action. *LaChance,* 965 F. Supp. at 638.

In the instant matter, liability would clearly be hotly contested issues.  Further, Defendant would have argued that proof of any liability would require an individual class member by class member fact inquiry.  Indeed, much of the discovery propounded on the opt-in plaintiffs went to this very issue.  Moreover, Defendant believes they took sufficient measures to satisfy the notification requirements of the tip credit and adamantly denies that it failed to properly pay any

current or former employee, including the Plaintiff. Thus, liability and damages would have been hotly contested issues had this Action continued.

It is Class Counsel's considered opinion that settlement on the proposed terms at this juncture in the case, given the potential downside risks, upside rewards and concomitant costs of going forward, is the most prudent course for Plaintiff and the Settlement Class to take. *See Zanghi*, 2016 U.S. Dist. LEXIS 5914, *58 (finding settlement reasonable "because of the risks associated with establishing liability and damages and securing a judgment within a reasonable time frame").

### 5.    Risks Of Maintaining The Class Action Through The Trial

As a sister court aptly noted, "[t]here is always a risk of decertification in any class action." *Delandro*, 2011 U.S. Dist. LEXIS 55249, *33. "'Consistent with this reality,'" courts have been "'satisfied that the inherent difficulties of bringing a class action to trial weighs in favor of approving the settlements.'" *Id.,* at **33-34 (quoting *In re Automotive Refining Paint Antitrust Litigation*, 617 F. Supp. 2d 336, 344 (E.D. Pa. 2007)). This case is no different. Indeed, while Plaintiff believes that she could have maintained her certified class through trial, this was certainly no guarantee and there was cause for doubt. Undoubtedly, Defendant would have likely argued that whether each Tipped Employee was properly notified regarding the tip credit required an individual inquiry. Moreover, given that Defendant's defense was oral notification, it would have also argued that what each manager said is grounds for decertification.

Based on Class Counsel's experience in these kinds of cases, and Defendant's prior assertions, it is clear that Defendant would have continued to try and undermine the certified class and the conditionally certified FLSA collective class had the case moved forward. These risks render settlement at this juncture the prudent course.

### 6.      Ability Of The Defendant To Withstand A Greater Judgment

As the Parties' previous submissions in support of preliminary approval make clear, Defendant's ability to pay was a significant factor in the settlement negotiations.  Consequently, this *Girsh* factor is also counsels in favor of approval.  As Defendant's public filings (as well as the previously submitted Declaration of Jeffrey Rager) make clear, it is under severe financial distress and is in default of its principal loan agreement.  Indeed, "as it appears that defendants would not be able to withstand a greater judgment, resolution of this action through one settlement class benefits all plaintiffs by increasing the likelihood of collection."  *Flores v. Mamma Lombardi's of Holbrook, Inc.*, 104 F. Supp. 3d 290, 304 (E.D.N.Y. 2015) (approving settlement of class of restaurant workers where defendants declared they could not withstand greater judgment).

Thus, had Plaintiff and the Class not settled now, there is the very real risk that Defendant's financial condition would have worsened, and they could have potentially recovered significantly less or even nothing at all.   Accordingly, this factor certainly counsels in favor of approval. *See, e.g., In re Prudential Ins. Co. of Am. Sales Practices Litig.,* 962 F. Supp. 450, 540 (D.N.J. 1997) ("There is evidence that a greater judgment likely would adversely affect Prudential's credit rating, which has already declined during these proceedings, and would, thereby, affect Prudential's ability to compete, its revenues, and its profitability."), *aff'd*, 148 F.3d 283 (3d Cir. 1998).

In short, this case represents a text book case of a "bird in the hand" and thus warrants final approval of the proposed Settlement. *See In re Rent-Way Secs. Litig.*, 305 F. Supp. 2d 491, 507, 510 (W.D. Pa. 2003)(approving settlement where "Class Counsel are convinced that the proverbial 'bird in the hand' presented by the proposed Settlement is better than the 'two in the

bush' that might be awarded at trial" due to "serious" threat of defendant "commencing bankruptcy proceedings").

### 7.    Range Of Reasonableness Of The Settlement Fund In Light Of The Best Possible Recovery And All The Attendant Risks Of Litigation

"This inquiry measures the value of the settlement itself to determine whether the decision to settle represents a good value for a relatively weak case or a sell-out of an otherwise strong case." *General Motors*, 55 F.3d at 806. In *General Motors*, the Third Circuit further explained that:

> [I]n cases primarily seeking monetary relief, the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement . . . The evaluating court must, of course, guard against demanding too large a settlement based on its view of the merits of the litigation; after all, settlement is a compromise, a yielding of the highest hopes in exchange for certainty and resolution.
> *Id.* (citation omitted.)

As previously discussed the proposed Settlement confers a substantial benefit on the Class. Despite Defendant's financial hardship, the proposed settlement represents approximately 41% recovery of back wages due to Defendant's improper claiming of the tip credit. This is in line with other tip credit cases. *See, e.g., Graudins v. Kop Kilt, LLC*, No. 14-cv-2589, 2017 U.S. Dist. LEXIS 25926 (E.D. Pa. Feb. 24, 2017) (granting final approval for $300,000 settlement for class of employees at single restaurant who alleged, *inter alia*, tip credit notification violation); *Kotchmar v. Movie Tavern Partners, LP, et al.*, No. 15-cv-04061 (E.D. Pa. 2016) (granting final approval of $750,000 settlement which represented approximately 50% of alleged improper tip credit claimed).

Consequently, this factor also favors final approval of the proposed settlement.

**B.     THE PROPOSED SETTLEMENT PROVIDES SUBSTANTIAL BENEFIT TO THE CLASS**

Defendant has agreed to pay a Settlement Amount of $305,000 out of which Participating Settlement Class Members will be paid, based on the number of hours worked during the Class Period.  The precise amount paid to Participating Settlement Class Members will be determined once all Court approved deductions are made.  Importantly, Plaintiff's counsel negotiated the Settlement to meet all the requirements of the FLSA collective action provisions, and the class action provisions of Rule 23, and specifically to provide an administrative process that would assure Settlement Class Members equal and sufficient due process.  As described above, each Participating Settlement Class Member will receive a portion of the Settlement Amount based on the amount of alleged damages they specifically incurred (e.g., the number of hours they worked).  Thus, the more hours an individual Participating Settlement Class Member worked, relative to his or her colleagues, the greater his or her share of the Settlement's proceeds.

Further, the Settlement does not unduly grant preferential treatment to the Plaintiff.  She is instead offered, subject to the Court's approval, a reasonable Service Payment that recognizes the added contribution she made to the prosecution of the litigation, including the burden and risks associated with bringing this action publicly (e.g., sitting for her deposition and attending the mediation).  *See* Wells Decl. at ¶170; *see also* Koenig Decl. at ¶¶13-20. Justification of the proposed Service Payment and Class Counsel's requested fee and expense award is set forth in separate memorandum.

## VI.     THE COURT SHOULD FINALLY CERTIFY THE SETTLEMENT CLASS

The Court previously entered an order certifying for settlement purposes an expanded class than what was previously certified in the Court's Order of May 11, 2017 ("May Order"). Specifically, pursuant to the Settlement Agreement, the applicable Class Period for both the Pennsylvania Class and FLSA collective was enlarged to run through August 31, 2017.

Respectfully, there is no sound reason to disturb the prior certification order nor not enlarge the Class Period pursuant to the Parties' agreement. Indeed, the Settlement Class does not include any individual who was not sent notice pursuant to the Court's May Order. Thus, all of the reasons set forth in Plaintiff's motions for class and collective certification still apply.

Indeed, the FLSA Class demonstrates the propriety of maintaining the Court's previous orders regarding certification. "For a collective action to proceed two requirements must be met: (1) all members of the collective action must affirmatively consent to join and (2) all members of the collective action must be 'similarly situated.'" *In re Janney Montgomery Scott*, 2009 U.S. Dist. LEXIS 60790, at *18 (citing *Chemi v. Champion Mortgage*, Civ. A. No. 05-1238, 2009 U.S. Dist. LEXIS 44860 (D.N.J. May 26, 2009)). Here, Plaintiff is confident that she could prove that all FLSA Class members are similarly situated due to the claims they allege (tip credit violations) and the positions they held with Defendant as Tipped Employees. Indeed, a sister court in this Circuit recently found that servers working in one of two restaurants similarly situated for purposes of effectuating the FLSA release in a proposed settlement where each individual alleged a tip credit violation. *See Leap v. Yoshida,* No. 14-3650, 2016 U.S. Dist. LEXIS 57819, **15-16 (E.D. Pa. April 29, 2016); *see also Rouse v. Comcast Corp.*, No. 14-cv-1115, 2015 U.S. Dist. LEXIS 49347, *14 (E.D. Pa. April 15, 2015)(granting final FLSA certification where individuals "all assert the same claims and seek the same form of relief"). Thus, like the *Janney* court, this Court should be "satisfied that, for the purposes of settlement" the Participating Settlement Class Members "have satisfied the requirements for collective action certification." *Id.*

VII.   **CONCLUSION**

The proposed settlement provides a fair, reasonable and adequate award to Plaintiff and the proposed Settlement Class and puts an end to this Litigation. Accordingly, final approval

should be granted.  The proposed Settlement Class satisfies all the applicable Federal Rules of

Civil Procedure.  Consequently, this Court's prior May Order regarding class and collective

certification should not be disturbed.  For the foregoing reasons, Plaintiff respectfully requests

that the Court: (1) grant final approval of the Settlement; (2) certify, for settlement purposes

only, Plaintiff's claims pursuant to Fed. R. Civ. P. 23(b)(3).


Dated: February 26, 2018                          Respectfully submitted,

                                                  **CONNOLLY WELLS & GRAY, LLP**

                                                  By: */s/ Gerald D. Wells, III*
                                                       Gerald D. Wells, III, Esq. (PA ID88277)
                                                       (admitted *pro hac vice*)
                                                  Robert J. Gray, Esq. (PA ID 86251)
                                                  (admitted *pro hac vice*)
                                                  2200 Renaissance Boulevard, Suite 275
                                                  King of Prussia, PA 19406
                                                  T: 610-822-3700
                                                  F: 610-822-3800
                                                  gwells@cwglaw.com
                                                  rgray@cwglaw.com

                                                  *Class Counsel*

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on the 26th day of February, 2018, a true and correct copy of the foregoing document was filed with the Court utilizing its ECF system, which will send notice of such filing to all counsel of record.

*/s/ Gerald D. Wells, III*
Gerald D. Wells, III
